UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| BREATHABLEBABY, LLC, a Minnesota company, | Case No. 10-CV-3989 (PJS/JJK) |
| Plaintiff, | |
| v. | ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION |
| SUMMER INFANT, INC., a Delaware corporation, | |
| Defendant. | |

Douglas J. Williams, Niall A. MacLeod, Felicia J. Boyd, and Aaron A. Myers, BARNES & THORNBURG LLP, for plaintiff.

Jack C. Schecter and Kerry L. Timbers, SUNSTEIN KANN MURPHY & TIMBERS LLP; Ruth Rivard and Kevin D. Conneely, LEONARD, STREET & DEINARD, PA, for defendant.

Plaintiff BreathableBaby, LLC contends that defendant Summer Infant, Inc.'s "Breathe Easy Baby" crib bumpers and crib-bumper systems infringe U.S. Patent No. 7,055,192 (the '192 patent), which BreathableBaby owns. BreathableBaby moves for a preliminary injunction prohibiting Summer Infant from distributing the accused products. Although the '192 patent includes 25 claims, BreathableBaby's preliminary-injunction motion is based solely on Summer Infant's alleged infringement of claim 19. The relevant facts are known to the parties and need not be repeated here. For the reasons that follow, the Court denies the motion.

The Court must consider four factors in deciding whether to grant a motion for a preliminary injunction: (1) plaintiff's likelihood of succeeding on the merits and proving infringement; (2) whether plaintiff will suffer irreparable harm without an injunction; (3) the balance of hardships to the parties if the Court grants or denies the motion; and (4) the public

interest in an injunction.  *See Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 & n.12 (Fed. Cir. 1988) (explaining preliminary-injunction standard and holding that, in patent cases, Federal Circuit law governs substantive questions related to preliminary-injunction motions); *see also Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

BreathableBaby makes a good argument that because of its small size and the importance of the patented product to its business, two of these factors — irreparable harm and the balance of hardships — weigh in its favor.  *See* Pl. Mem. Supp. Mot. P.I. at 7-9 [Docket No. 21].  And the public interest weighs in favor of granting an injunction if the '192 patent is indeed valid and infringed.

But the first factor outweighs the other three and counsels against granting an injunction. Specifically, the Court finds that BreathableBaby is unlikely to succeed in proving infringement. The Court is, of course, not deciding whether BreathableBaby will ultimately prove infringement. Perhaps with additional discovery and further briefing, BreathableBaby will persuade the Court to construe the '192 patent's claims in a way that favors its case — and perhaps, based on that construction, BreathableBaby will prove infringement either on summary judgment or at trial. But given the evidence now before the Court, BreathableBaby's infringement case appears weak.

Language in a particular patent claim must be construed in the context of both that individual claim and the entire patent, including the specification.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).  Indeed, the specification, read in light of the prosecution history, is the primary basis for construing patent claims.  *Id.* at 1315.

Summer Infant's noninfringement argument is simple, and turns on the meaning of the word "integrated" in claim 19's requirement that the claimed invention be made of a "breathable

integrated padded mesh material." According to Summer Infant, "integrated . . . material" in this context means "a unitary structure, not composed of separate, distinct layers." Def. Br. Opp. Mot. P.I. at 13 [Docket No. 30].

Although the Court cannot definitively construe claim 19 on the current record, the Court agrees with the thrust of Summer Infant's position. An "integrated" mesh material, as that term is used in claim 19, means a material that is fabricated (by weaving or some other method) as an integral, unified material in which all of its constituents are connected across their entire front and back surfaces into a mesh material. Conversely, an "integrated" mesh material is *not* a material made up of distinct, individually woven or fabricated materials that are then attached together only at their edges, or only at discrete points, rather than integrally across their entire front and back surfaces.

Both the specification of the '192 patent and the prosecution history support this provisional claim construction. In particular, the specification, when describing the "breathable integrated padded mesh material" used in a preferred embodiment, says that the material

> is a woven polymeric fiber mesh material that includes larger openings on the front substructure 391 than on the back substructure 392 and to which such substructures 391, 392 are woven using the fibers that are provided as part of pile substructure 393. In such a manner, these fibers that form a part of the pile substructure 393 are integrated with and extend between front and back substructures 391, 392. In other words, they form a unitary structure. This is substantially different than a structure whereby a mesh material or some other material is provided as the back or front covering with a pad material therebetween (e.g., a pad quilted in between a front and back material or a pad laminated between a front and back material). *Such a layered structure is not*, and does not, provide the same functionality as *an integrated (i.e., unitary) breathable padded mesh material* 300, such as shown in Figs. 2C-2F.

'192 patent col. 9:10-25 (emphasis added).

The last sentence in this passage is crucial. In that sentence, the patentee says unmistakably that a "layered structure" — namely, a structure in which "a mesh material or some other material is provided as the back or front covering with a pad material therebetween" — is *not* "an integrated (i.e., unitary) breathable padded mesh material . . . ." '192 patent col. 9:18-25. In provisionally construing the phrase "breathable integrated padded mesh material" in claim 19, the Court cannot disregard the fact that the patentee explicitly excluded from that term's definition material in which a pad is merely sandwiched between layers of mesh. In effect, the specification "reveal[s] an intentional disclaimer, or disavowal, of claim scope by the inventor." *Phillips*, 415 F.3d at 1316. Accordingly, "the inventor has dictated the correct claim scope" — here, a scope that does not include a sandwich-type structure like that found in the accused product — "and the inventor's intention, as expressed in the specification, is regarded as dispositive." *Id.*

BreathableBaby argues that claim 20 explicitly claims a "breathable integrated padded mesh material" with a layered structure, and that claim 19 must therefore be broad enough to cover a "breathable integrated padded mesh material" with either a layered or a nonlayered structure.[1] The Court agrees that the "breathable integrated padded mesh material" claimed in claim 19 could be made without layers. For example, it could be made of single thickness of some type of foam material formed into a mesh. But it does not follow that claim 19 covers a "breathable integrated padded mesh material" with a layered structure in which the layers are

---

[1] BreathableBaby made this argument for the first time at the preliminary-injunction hearing.

connected only at their edges.  The layered structure described in claim 20 is made of "a front substructure, a back substructure, and a pile substructure *integrated with* and extending between the front and back substructures . . . ."  '192 patent col. 19:37-40 (emphasis added).  The layered material described in claim 20 is a material in which the layers are connected across their entire surfaces.  Nothing about claim 20 alone, or about claims 19 and 20 together, can overcome the specification's express assertion that "breathable integrated padded mesh material" does not include a layered material in which the layers are connected at their edges rather than across their entire surfaces.

Further, the prosecution history reinforces the Court's provisional construction of the term "breathable integrated padded mesh material" to exclude materials such as those used in the accused product.

In exchanges with the PTO, the patentee distinguished three different patents that the examiner cited in rejecting certain of the patentee's claims: (1) U.S. Patent No. 6,055,690 to Koenig ("Koenig"); (2) U.S. Patent No. 5,881,408 to Bashista et al. ("Bashista"); and (3) U.S. Patent No. 4,644,591 to Goldberg ("Goldberg").  The Court discusses in turn how the patentee's arguments with respect to each of these patents shed light on the term "breathable integrated padded mesh material."

The examiner rejected certain claims as anticipated by Koenig.  Schecter Decl. Ex. C at 4 [Docket No. 31-3].  Koenig is directed to "improved sleeping pads, beddings and bumper pads within a crib or the like to improve the respiratory efficiency and environmental temperature of an infant."  Koenig col. 1:12-15.  The examiner described Koenig as disclosing "a body portion formed of a breathable integrated padded mesh material" because Koenig includes material made

of "foam padding enclosed within an *open-weave* covering . . . ." Schecter Decl. Ex. E at 5 (emphasis in original) [Docket No. 31-5].

In response, the patentee said:

> Although Koenig describes a comforter in Figure 13, Koenig does not describe that the comforter is formed substantially of a breathable integrated padded mesh material as described in claim 27. Rather, Koenig describes use of an open weave covering filled with a reticulated foam fill material. This is not a breathable integrated (i.e., unitary) padded mesh material as described in claim 27.

Schecter Decl. Ex. F at 14 [Docket No. 31-6].

Koenig is directed generally to breathable, padded materials for a crib. *See* Koenig col. 3:34 to col. 5:27. Accordingly, the patentee must have been distinguishing Koenig's material from the patentee's "breathable integrated padded mesh material" not because Koenig's material was not "breathable" (it was), nor because Koenig's material was not "padded" (it was), nor because Koenig's material was not "mesh" (it was, because an "open weave" is a kind of mesh). Rather, the patentee must have been distinguishing Koenig's material on one basis alone: as not being "integrated." In arguing that a covering filled with foam fill material was not "integrated," the patentee affirmed what it said in the specification: The "breathable integrated padded mesh material" claimed in the '192 patent does not include a material in which two outer layers surround a filling that is not connected across its surface to those outer layers.

The patentee's discussion of Bashista also supports, though less strongly, the Court's provisional construction of the term "integrated." Bashista is directed at a crib bumper with mesh panels near the mattress that are attached to quilted padding near the top of the crib rails. Bashista col. 1:54 to 2:24. The patentee distinguished its patented material from two types of

material found in Bashista. First, the patentee said that Bashista used "a mesh for the side panels," not the "breathable integrated (i.e., unitary) padded mesh material" described in the '192 patent. Schecter Decl. Ex. D at 11 [Docket No. 31-4]. The patentee seemed to be distinguishing here between, on the one hand, "mesh" (found in Bashista) and, on the other hand, "padded mesh" (not found in Bashista). This exchange sheds no light on the meaning of "integrated" in the phrase "breathable integrated padded mesh material."

But the patentee also said that Bashista "describes a quilted material, such as a three-ply fabric having outer cotton layers and an intermediate cushion layer," which the patentee said was not a "breathable integrated padded mesh material . . . ." *Id.* Perhaps the patentee was arguing that the quilted material in Bashista differs from the patentee's claimed "breathable integrated padded mesh material" because Bashista's quilted material is not *breathable*. Alternatively, the patentee may have been arguing that the quilted material in Bashista differs from the patentee's claimed material because the quilted material is made in layers and thus is not *integrated*. It is reasonable to infer, particularly given the language of the '192 patent's specification and the patentee's discussion of Koenig, that the patentee was making the second distinction — namely, that Bashista's three-layer quilted material was not integrated, and thus Bashista did not anticipate claim 19 of the '192 patent.

Finally, the examiner rejected certain claims as anticipated by Goldberg. Goldberg is directed at "a soft sculpture face mask which presents a three-dimensional face mask design for hiding the actual physical features of the wearer." Goldberg col. 1:8-10. The examiner described Goldberg as disclosing "a breathable integrated padded mesh material" because Goldberg

includes "a breathable nylon mesh layer affixed to layers of felt-like and cotton-like padding."

Schecter Decl. Ex. E at 5.  In response, the patentee said:

> Goldberg does not describe an object that is formed substantially of a breathable integrated padded mesh material as described in claim 27.  Rather, Goldberg describes two skins stuffed with a stuffing material (e.g., cotton like material as described in column 3).  This is not a breathable integrated (i.e., unitary) padded mesh material as described in claim 27.

Schecter Decl. Ex. F at 16.

The patentee could have been making one or both of two different distinctions here:  The patentee could have been distinguishing Goldberg as not having *breathable* material, or as not having *integrated* material.  Yet Goldberg expressly said that the stuffing material between the patented face mask's two layers "minimizes the overall weight of the product while simultaneously allowing the *entire face mask* to be breatheable [*sic*]."  Goldberg col. 2:38-40 (emphasis added).  It is therefore reasonable to infer that the patentee was arguing that Goldberg's material was not integrated, rather than that Goldberg's material was not breathable.

But even if the Court's reading of some or all of the prosecution history is incorrect, the Court still finds, based solely on the specification and claims of the '192 patent, that BreathableBaby is unlikely to prevail on proving infringement of claim 19.  The patentee told the world that a layered structure like the one found in the accused products "is not . . . an integrated (i.e., unitary) breathable padded mesh material . . . ." '192 patent col. 9:23-25.  Relying on that representation, Summer Infant designed and manufactured the accused products.  It is unlikely that Summer Infant will be found to have infringed the '192 patent.

In sum, the Court finds, for purposes of BreathableBaby's preliminary-injunction motion, that the term "integrated" cannot be construed to cover the material in the accused product.

BreathableBaby is thus unlikely to succeed on the merits of its infringement claim, and this factor so outweighs the other three preliminary-injunction factors that the Court denies BreathableBaby's motion.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, plaintiff Breathablebaby, LLC's motion for a preliminary injunction [Docket No. 16] is DENIED.

Dated:  March  1 , 2011         s/Patrick J. Schiltz
                                Patrick J. Schiltz
                                United States District Judge